Mel Marin  
Box 120006  
San Diego, CA 92112

June 2, 2025



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MEL MARIN, | Case Number _____ |
| Plaintiff, | COMPLAINT FOR FRAUD |
| | AND |
| v. | FOR BREACH OF CONTRACT |
| | AND |
| | FOR NEGLIGENCE |
| | ( FAILURE TO TRAIN ) |
| FRONTIER AIRLINES, INC. | AND |
| AND ITS ALTER EGOS | FOR VIOLATIONS OF THE |
| INDIGO PARTNERS, LLC, | CALIFORNIA BUSINESS AND |
| AND WILLIAM FRANKE, | PROFESSIONS CODE §17200 |
| JOINTLY AND SEVERALLY, | (UNFAIR COMPETITION LAW) |
| Defendants, | JURY DEMANDED |

**JURISDICTION**

1. This court has jurisdiction by diversity, 28 U.S.C. § 1332, because all defendants are residents of Colorado or Arizona and plaintiff is not, and his claim for damages exceeds $100 million.

1

2. All breathing defendants are co-owners and alter egos of Frontier and, therefore, all defendants are real parties with standing to be defendants.

3. Plaintiff was injured by the loss of a $100,000 lawsuit in Ohio for personal injury for the dismissal of that lawsuit for failing to appear in time for a deposition in Ohio in the morning of June 6, 2023 because his flight left *early*, thereby breaching the contract of carriage that is not covered by limitations of claims under international convention for flights that leave *late*. *Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361, 370 (S.D.N.Y. 2006)("plaintiffs' bumping claims should be read as grounded in a cause of action for non-performance of contract and not delay. They are, therefore, not preempted by the Montreal Convention.[9]").

4. The appeal against that Ohio dismissal was denied on about May 3, 2025, making his injury final and, therefore, giving him standing for that financial and physical injury from the loss of that case and the medical costs for treatments he needed from that case for physical injuries.

## FIRST CAUSE OF ACTION FOR BREACH
## AGAINST ALL DEFENDANTS

5. Plaintiff appeared at the gate at the San Diego Airport at exactly 8:00pm on June 5, 2023 ready to board, pursuant to the Frontier representation to plaintiff

2

on that same day, June 5, 2023 that all persons had to be at the gate by 15 minutes prior to the scheduled departure time, to fly.

6. The listed departure time was 8:19pm.

7. However, he discovered the door to the ramp was locked.

8. He asked the airline employee still at the gate to open the door so he could get on. She informed plaintiff that they actually locked the door and the plane was moving at 7:55pm, which was 13 minutes too early.

9. Plaintiff ran down to the ticket counter to find a substitute, and he was then booked for a flight later that same night that could still arrive in Ohio the next morning but 2 hours too late to start the ordered deposition.

10. However, that second flight was cancelled abruptly at about midnight, which was by then too late to try any other airline, although plaintiff went from one airline desk to another to make that effort until all the airlines that could have made it in time at a cost he could pay, closed.

11. Plaintiff then called opposing counsel to try to schedule a new deposition date and they refused.

12. The district court then dismissed that personal injury lawsuit valued at over $100 million on about July 13, 2023, and the 6th Circuit denied the appeal on about May 3, 2025.

13. Plaintiff was injured by the loss of that law suit and the full value he

could have collected based on medical records for his injuries.

14. Plaintiff was also injured physically, because the loss of that lawsuit and the verdict it would highly have produced because the defendant did not deny liability, denied plaintiff the money he needed for expensive medical treatments, resulting in the deterioration of his medical condition in the last two years, including amassing an additional permanent disability that would not have occurred but for his forced stay in California waiting for the Ohio case to complete, and commensurate mental anguish and emotional distress from the worry of death before a jury will award enough damages to pay for the very expensive treatments he needs in China, Sri Lanka, and the United States.

15. Because of the loss of that jury award and the medical treatments that it would have paid for, plaintiff was not able to recover from the medical disabilities it created sufficiently to allow him to work in the field of his choice, as a Patent Agent since he had to spend the last two years in limited physical movements while attempting to pursue that career with the disabilities which was thus far, impossible.

16. He would likely have earned approximately $355,400 a year on average for that work from 2024 to 2027 by the time this action finishes and appeal is exhausted, which is an opportunity cost of $2,255,722.57 as follows:





17. But for the failure of the defendants' airline to honor its contract with plaintiff, he would not have lost over $100 million in a likely jury award.

18. Therefore, the failure of that flight was an actual, proximate or substantial cause of the loss of that expected jury verdict in Ohio and of the additional physical decompensation to plaintiff's medical condition, and of the loss of salary as estimated above by the interest calculator:

> "General damages" are those that flow naturally from the breach of contract, whereas "special" or "consequential damages" are other foreseeable damages within the reasonable contemplation of the parties at the time the contract was made. . ... In this case, general damages are the actual value of unpaid medical provider bills and medical equipment, and special damages include economic and non-economic losses such as lost earnings, mental anguish, impairment of quality of life, etc.

*Giampapa v. American Family Mut. Ins. Co.*, 64 P.3d 230, 237 n. 3 (Colo. 2003).

19. WHEREFORE, plaintiff seeks and is entitled to $100 million in compensation for that breach from the loss of that jury verdict, and another $5 million for mental anguish and personal injuries resulting from the denial of those funds for medical treatments, and another $2.26 million in salary loss from each defendant.

### SECOND CAUSE OF ACTION FOR NEGLIGENCE
### ( FAILURE TO TRAIN / SUPERVISE )
### AGAINST ALL DEFENDANTS

20. All allegations above are incorporated into ths cause of action by this reference.

21. The pilot decided to leave early "on a whim", because he was tired of waiting until the time allowed by the contract with this plaintiff.

22. He followed that whim because the defendants here failed to teach their pilots that the company is *not* immune from all claims of all kinds, and failed to supervise them to make sure they are not violating state and federal laws and contracts.

23. Additionally, the defendants failed to train their staff to inform travelers of these secret terms before they paid for the tickets, a deliberate failure to train.

6

24. To state a claim for negligence a plaintiff must show: "first, the defendant owed a legal duty of care; second, the defendant breached that duty; third, the plaintiff was injured; and fourth, the defendant's breach caused that injury." *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo.2002).

25. The first element is established here as a matter of law because plaintiff was a passenger and that created a special relationship of the airline to honor the terms of that contract of passage. *University of Denver v. Whitlock*, 744 P. 2d 54, 58 (Colo. 1987) ("some definite relation between the parties, of such a character that social policy justifies the imposition of a duty to act. . . . Special relationships that have been recognized by various courts for the purpose of imposition of a duty of care include common carrier/passenger").

26. The second is here because these facts showed the airline breached that duty.

27. The third is here because plaintiff shows he was injured in several ways from that breach of the duty.

28. The fourth is here because he alleges, and the Ohio dismissal order shows that failure of these defendants was the actual cause of the loss of that case.

29. WHEREFORE, plaintiff seeks and is entitled to $100 million in compensation for that breach from the loss of that jury verdict, and another $5 million for mental anguish and personal injuries resulting from the denial of those

funds for medical treatments, and another $2.26 million in salary loss from each defendant.

### THIRD CAUSE OF ACTION FOR FRAUD
### AGAINST ALL DEFENDANTS

30. All allegations above are incorporated into ths cause of action by this reference.

31. Moreover, the defendants omitted terms of their contract with this plaintiff deliberately.

32. The first was the fact that they do not require their pilots to obey state and federal laws and contracts but allow them to do whatever they want and, therefore, the departure time agreed to was not a tem at all to these defendants.

33. The second was their policy not to refund the price paid for plane tickets and not to tell travelers until a flight is missed and they need the money to pay for another flight, as occurred here.

34. The third was their policy of refusing to "cover" for their breach by paying whatever additional charge themselves on a different airline to solve the crisis.

35. The fourth was their imposition of an arbitration requirement *after* the passenger paid for the ticket and received it, and not before. Therefore, that term

"tacked-on" after the fact is void because it was a secret, and the defendants committed fraud by omitting to reveal that secret until discovery later.

36. They knew at the time that they were omitting those void terms of the contract because they were not offered before buying the tickets, but executed a policy of not telling passengers to avoid competition by going to a different airline.

37. Plaintiff had no idea they were hiding this vital information and had he known he would have booked with a different airline.

38. Because he relied on them following the term given him when he booked his flight, he suffered the losses described above.

39. This deliberate premeditated execution of omission constituted "willful and wanton conduct" that was an actual, proximate or substantial cause of those losses visited upon this plaintiff.

40. Moreover, this premeditated scheme of deliberate omissions, which is a form of orchestrated deceit, also demonstrated malice entitling plaintiff to punitive damages in an amount of at least double the value of the compensatory loss, and the jury may not consider the net worth of the defendants in assessing an exemplary amount and that amount is to punish the defendants and has nothing to do with the conduct of the plaintiff who is injured, and need not be limited to his compensatory losses. *Lira v. Davis*, 832 P. 2d 240, 242-43 and n. 3 (Colo. 1992).

41. WHEREFORE, plaintiff seeks and is entitled to $100 million in compensation for that breach from the loss of that jury verdict, and another $5 million for mental anguish and personal injuries resulting from the denial of those funds for medical treatments, and another $2.26 million in salary loss from each defendant, and $200 million in punitive damages from each defendant.

### FOURTH CAUSE OF ACTION FOR BREACH OF THE CALIFORNIA UCL AGAINST ALL DEFENDANTS

42. All allegations above are incorporated into ths cause of action by this reference.

43. If the jury finds the defendants committed fraud above, then this state statute is automatically satisfied as well, entitling plaintiff to the remedy of this statute which is injunction alone.

44. WHEREFORE, plaintiff seeks and is entitled to an order directing the defendants to refund the ticket prices Mel paid.

45. These allegations are verified.

DATED: June 2, 2025

_[signature]_
Mel Marin, Plaintiff




